c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES THOMPSON,<br>Plaintiff | CIVIL ACTION NO. 1:17-CV-00982 |
| VERSUS | JUDGE DRELL |
| KENNETH HEDRICK, *ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are virtually identical Rule 12(b)(6) Motions to Dismiss filed by Defendants Concordia Parish Sheriff Kenneth Hedrick ("Sheriff Hedrick"), Concordia Parish Deputy Sheriff Brown ("Brown"), and Concordia Parish Deputy Sheriff Brock ("Brock") (collectively referred to as "Defendants"). (Docs. 22, 36). Plaintiff James Thompson ("Thompson") opposes the motions. (Docs. 29, 38).

Because Thompson fails to state a plausible claim for relief against Defendants in both their individual and official capacities under § 1983, and because Brown and Brock are entitled to qualified immunity, Defendants' motions (Docs. 22, 36) should be GRANTED IN PART. Because Sheriff Hedrick is subject to vicarious liability under state law, Defendants' motions (Docs. 22, 36) should be DENIED IN PART. And because the undersigned recommends dismissal of all federal claims, the Court should decline to exercise supplemental jurisdiction over Thompson's state law claims.

## I.    Background

Thompson filed this civil rights action, *in forma pauperis*, under 42 U.S.C. § 1983, asserting violation of his Eighth Amendment right to adequate medical care while housed at both the Concordia Parish Correctional Facility (the "Correctional Facility") and Concordia Parish Work Release Facility (the "Work Release Facility"). (Docs. 1, 35). Thompson also asserts supplemental state law claims under La. R.S. 9:2798.1. (Docs. 1, 35). Thompson names as Defendants Sheriff Hedrick, Brown, Brock, and Concordia Parish Deputy Sheriff Deborah Cowan ("Cowan"), in their individual and official capacities. (Docs. 1, 35).[1]

Thompson has a history of high blood pressure, acid reflux, and asthma, for which he takes daily medications. (Docs. 1, 35). Thompson was sentenced to ninety days following a probation revocation hearing on July 11, 2016. (Docs. 1, 35). After being incarcerated for one week at the Rapides Parish Detention Center ("RPDC"), he was transferred to the Correctional Facility. (Docs. 1, 35). Thompson asserts he inquired about his medications and was initially told by a staff member that they were with his belongings. (Docs. 1, 35). After a couple of days, Thompson claims he did not find his medications with his belongings and inquired again. (Docs. 1, 35). He

---

[1] On August 28, 2018, the Court denied Defendants' first motion to dismiss (Doc. 12) for improper and untimely service, granting Thompson thirty days to effect service upon all named defendants, or file to a waiver of service. (Doc. 16). The Court ordered appointment of a private process server on September 6, 2018. (Doc. 18). On September 15, 2018, service was returned unexecuted on Cowan, under the name "Towan," with a notation that she is retired, with no forwarding address available. (Doc. 21). No further action has been taken, and service has not been perfected on Cowan. Thus, the Court recommends Cowan be dismissed under Fed. R. Civ. P. Rule 41(b) for failure to comply with the Court's order to effect service.

was told by an unknown staff member that the Correctional Facility never received his medications. (Docs. 1, 35).  He was then transferred to the Work Release Facility. (Docs. 1, 35).

Upon arrival at the Work Release Facility, Thompson asked again for his medications without success. (Docs. 1, 35).  Thompson claims he was eventually assessed by Cowan, a nurse, who gave him ibuprofen, an unidentified blood pressure pill (not resembling his own), and acid reflux medication. (Docs. 1, 35).  Despite some relief, Thompson asserts he asked Cowan to pull his pharmacy records from any CVS Pharmacy to obtain the names of his medications and primary physicians.  (Docs. 1, 35). Thompson claims his request was ignored. (Doc. 1, 35).  Thompson further asserts he recommended that Cowan contact the RPDC to locate the medications, and that request was also ignored. (Docs. 1, 35).

While at the Work Release Facility, Thompson admits he received asthma treatment two times a day and had his blood pressure checked three times a day. (Docs. 1, 35).  The asthma treatment was effective, but Thompson claims his blood pressure remained elevated at every check. (Docs. 1, 35).  Thompson asserts Cowan did not believe Thompson needed his prescribed blood pressure medication. (Docs. 1, 35).  Thompson asserts that over the next 20 days, Thompson asked Cowan for the correct medication daily but was told "you will get your medicine." (Doc. 35). Thompson claims he never received the correct medication, and was instead forced to take the blood pressure medication given to him. (Doc. 35).  Thompson complained daily to Cowan that the medication she was giving him was not working because he

was constantly at a loss of breath, the right side of his body was numb, and had a constant dull headache. (Doc. 35). Thompson asserts that, during this same twenty-day period, he asked to see a doctor three to four times a week. (Doc. 35).

Thompson began having chest pains on August 14, 2016, and informed Brown he believed he was having a heart attack and needed to go to the hospital immediately. (Docs. 1, 35). Brown responded that Thompson needed a nebulizer treatment. (Docs. 1, 35). Thompson claims that, immediately thereafter, he lost his bowels and asked Brown for assistance to the restroom. (Docs. 1, 35). Brown refused. (Docs. 1, 35). Thompson contends Brock, upon witnessing the incident and instead of calling 911, transported Thompson to Riverland Medical Center. (Docs. 1, 35). Thompson was then transferred to Rapides Regional Medical Center for treatment of a heart attack. (Docs. 1, 35).

Thompson asserts he had a heart attack due to not taking the proper medication and that, after an uneventful stent surgery, he remained hospitalized for six days. (Docs. 1, 35). Thompson claims he had approximately 45 days remaining on his sentence and expected to be brought back to the Correctional Facility. (Doc. 35). But he was told he was free to go. (Doc. 35). Thompson asserts Sheriff Hedrick has a policy of keeping operation costs down by providing "cheap" medical care, jeopardizing inmate safety. (Doc. 35). Thompson claims Sheriff Hedrick released him to avoid responsibility for follow-up treatment, or additional medical treatment of possible complications. (Doc. 35). Thompson contends Brown and Cowan were still

under a duty to provide adequate medical treatment to him after he was released from the hospital, if needed. (Doc. 35).

Thompson contends Sheriff Hedrick was the responsible decisionmaker and policymaker for the Concordia Parish Sheriff's Department ("CPSD"). (Docs. 1, 35). Thompson asserts Sheriff Hedrick employed Brown, Brock, and Cowan as full-time sheriff deputies for the CPSD. (Docs. 1, 35). Thompson claims Defendants were deliberately indifferent to his serious medical needs leading to, and after, a heart attack, in violation of the Eighth Amendment. (Docs. 1, 35). Thompson contends Sheriff Hedrick is also liable under state law, La. R.S. 9:2798.1, for Defendants' "tortuous, criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, and flagrant acts," while in the course and scope of their employment for Sheriff Hedrick. (Docs. 1, 35). Thompson further asserts claims under § 1983 against Sheriff Hedrick for the actions of Brown, Brock, and Cowan, due to lack of training. (Docs. 1, 35).

In response, Defendants seek dismissal of Thompson's claims. (Docs. 22, 36). Thompson responded to the first motion seeking leave to amend, which the Court granted. (Docs. 27, 34). Thompson's First Supplemental and Amended Complaint corrects the mis-naming of Cowan, as noted above, and alleges more specific factual allegations regarding Defendants' alleged deliberate indifference to his serious medical needs, as set forth above. (Doc. 35). Thompson also opposes both motions to dismiss. (Docs. 29, 38).

## II.    Law and Analysis

### A.    Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility does not equate to possibility or probability; it lies somewhere in between.  Id.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  See Twombly, 550 U.S. at 556.  The court must view all well-pleaded facts in the light most favorable to the plaintiff.  Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  Iqbal, 556 U.S. at 678.  A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand.  Id.  Similarly, where the well-pleaded facts do not

permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief.  Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense.  Id.  In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Id.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).  However, that general rule does not apply if an amendment would be futile. Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 Fed.App'x. 366, 367 (5th Cir. 2010).

**B.    42 U.S.C. § 1983**

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity by the Constitution and laws of the United States.  42 U.S.C. § 1983.  Municipalities are "persons" within the meaning of § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.  Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937 (1982).  Purely private conduct, no matter how wrongful, is not within the protective orbit of § 1983.  Shelley v. Kraemer, 334 U.S. 1, 13 (1948).  Traditionally, "acting under color of state law requires that a defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988) (citing United States v. Classic, 313 U.S. 299, 326 (1941)).

 "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994) (citations omitted).  The first inquiry is whether the plaintiff has alleged a violation of a constitutional right at all.  Id.; see also Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995).

### C. Deliberate Indifference

Thompson asserts Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment. (Docs. 1, 35).  Inmates have a clearly established Eighth Amendment right against cruel and unusual punishment by prison officials. U.S. Const. amend. VIII; Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment is made applicable to the states by the Fourteenth Amendment.  Estelle, 429 U.S. at 101.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they show deliberate indifference to an inmate's serious medical needs.  Grogan v. Kumar, 873 F.3d 273, 277 (5th Cir. 2017) (citing Estelle, 429 U.S. at 103). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Deliberate indifference "is an extremely high standard to meet." Id. at 346 (citation omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." Domino v. Tex. Dep't Crim. J., 239 F.3d 752, 756 (5th Cir. 2001) (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  However, disagreement with the course of medical treatment does not state a claim of deliberate indifference. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

**D.** **Thompson's official capacity claims under § 1983 against Sheriff Hedrick, Brown, and Brock should be dismissed.**

Thompson asserts § 1983 claims against Sheriff Hedrick, Brock, and Brown in their official and individual capacities. (Docs. 1, 35).  Defendants argue Thompson's claims against Brown and Brock in their official capacities are redundant and should be dismissed. (Doc. 36-1).  Thompson's official capacity claims against Brock and Brown are functionally equivalent to his claims against Sheriff Hedrick in his official capacity and are therefore redundant.  See Broussard v. Lafayette City-Parish Consolidated Gov't, 45 F.Supp.3d 553 (W.D. La. Sep. 5, 2014) (citing Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001); Flores v. Cameron County, Tex., 92 F.3d 258, 261 (5th Cir. 1996)).  To the extent Thompson asserts § 1983 claims against Brown and Brock, in their official capacities, those claims should be dismissed.

Defendants seek dismissal of all § 1983 claims asserted against Sheriff Hedrick for failure to state a plausible claim for relief. (Doc. 36-1).  The Fifth Circuit has recognized that "official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Par. of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999); Monell, 436 U.S. at 690 n. 55.  Therefore, Thompson's official capacity claims against Sheriff Hedrick are treated as claims against a municipality. Cain v. City of New Orleans, 2016 WL 2849498, at *6 (E.D. La. May 13, 2016) (recognizing that a Louisiana sheriff was a municipal actor and subject to Monell's standard of liability).

Under Monell, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures.  Monell,

436 U.S. 658. Municipalities cannot, however, be liable under § 1983 for the constitutional torts of their employees under the doctrine of respondeat superior. Id. at 691.[2] Thus, a "Monell claim" is a claim against a municipality for a constitutional deprivation which is tied directly to a policy or custom of the municipality.

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Trammell v. Fruge, 868 F.3d 332, 344 (5th Cir. 2017) (quoting Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009)). "[W]hether an official ha[s] final policymaking authority is a question of state law." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Additionally, to establish that a policy is the moving force behind the violation, the plaintiff "must show direct causation." Peterson, 588 F.3d at 848 (citing Piotrowski, 237 F.3d at 580).

Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579. A policy is

---

[2] Defendants also seek dismissal of Thompson's § 1983 claims under *respondeat superior* against Sheriff Hedrick. (Doc. 36-1). Thompson responds he is not alleging *respondeat superior* liability under § 1983. (Doc. 38). Rather, Thompson asserts liability under La. R.S. 9:2798.1. (Doc. 38). It is firmly established that a municipality cannot be held liable for the unconstitutional acts of its non-policy making employees under the theory of *respondeat superior*. Monell, 436 U.S. at 691; see also Brown v. Taylor, 911 F.3d 235 (5th Cir. 2018) ("Section 1983 does not create supervisory or *respondeat superior* liability.") (quoting Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)). To the extent Thompson asserts *respondeat superior* under § 1983 against Sheriff Hedrick for the acts or omissions of Brock and Brown, the Court recommends those claims be dismissed.

official only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Under Louisiana law, the sheriff is a final policymaker for his parish's jail and may be sued in his official capacity. See Carter v. Frith, 2018 WL 1597742, at *5 n.4 (W.D. La. Apr. 2, 2018). Thus, Sheriff Hedrick is the final policymaker for CPSD.

Thompson asserts Sheriff Hedrick was the responsible decisionmaker and policymaker for the CPSD. (Docs. 1, 35). Thompson claims his need for proper medical attention was ignored by Brown, Brock, and Cowan. (Docs. 1, 35). He asserts Sheriff Hedrick released him from custody upon his release from the hospital, despite 45 days remaining on his sentence. (Doc. 35). Thompson contends Sheriff Hedrick "has a policy of keeping operation costs down by providing 'cheap' medical care to inmates that ultimately jeopardizes inmate safety; freeing plaintiff after being released from the hospital . . . so that [Sheriff Hedrick] would not be responsible for any follow-up treatment, or additional medical treatment if a complication developed." (Doc. 35). Thompson claims Brown, Brock, and Cowan were under a duty to provide adequate medical care to him after he was released from the hospital, if needed, because his sentence was not complete. (Doc. 35). Thompson contends Brown, Brock, and Cowan allegedly knew he would be released from the facility to avoid follow-up treatment or additional treatment of complications. (Doc. 35).

Defendants argue Thompson's Complaint is "void of any allegations of a factual nature that could plausibly lead to the conclusion that the policy at issue caused

12

[Thompson] to be denied access to medical care after his release or otherwise violated his constitutional rights." (Doc. 36-1). Defendants argue there are no allegations that future medical treatment was recommended or necessary, or that any policy at issue caused Thompson to be denied access to medical care upon his release from custody. (Doc. 35).   Thompson contends that his Eighth Amendment right to "adequate medical care" is violated when a prison official prematurely and illegally releases an inmate from incarceration following a hospital stay to avoid providing further medical care. (Doc. 38).

Thompson asserts Sheriff Hedrick, a municipal policymaker, has a policy of "keeping operation costs down by providing 'cheap' medical care to inmates" and intentionally released Thompson before completion of his sentence. (Docs. 1, 35). However, Thompson alleges delay and inadequate medical care prior to his heart attack.  But there is no allegation Thompson was denied access to medical treatment or medication because of his early release.  Rather, Thompson asserts Defendants had an ongoing duty to provide medical care, if complications arose or if follow-up treatment was necessary, as he had days remaining on his sentence.  Thompson does not include any allegations that he, in fact, required follow-up treatment or medications.  Thompson does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. Dec. 20, 1996) (citations omitted).  Upon his release, Thompson was free to pursue medical care, if, and when, necessary.

Construing the Complaint in a light most favorable to Thompson, he fails to state a violation of his constitutional rights by Sheriff's Hedrick's alleged policy of

early release of inmates to avoid or reduce medical costs. Thompson's § 1983 claims against Sheriff Hedrick, in his official capacity, should be dismissed.

    E.    <u>Thompson's § 1983 claim against Sheriff Hedrick, in his individual capacity, for failure to train should be dismissed.</u>

Thompson also brings § 1983 claims against Sheriff Hedrick, in his individual capacity, for failure to train. (Docs. 1, 35). Supervisory liability attaches only when: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." <u>Perniciaro v. Lea</u>, 901 F.3d 241, 259 (5th Cir. 2018) (quoting <u>Estate of Davis ex rel. McCully v. City of N. Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005)).

Deliberate indifference requires "actual or constructive notice that a particular omission in their training program causes [ ] employees to violate citizens' constitutional rights," yet the municipality nevertheless chooses to retain that program. <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (citation omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." <u>Id.</u> at 62; <u>see also</u> <u>Thompson v. Upshur County, TX</u>, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional rights." <u>Connick</u>, 563 U.S. at 62.

Thompson contends Sheriff Hedrick employed Brown, Brock, and Cowan as full-time sheriff deputies for the CPSD. (Docs. 1, 35).  Thompson claims Sheriff Hedrick is liable for the actions of Brown, Brock, and Cowan, due to lack of training. (Docs. 1, 35).  Thompson fails to specify any deficiencies in the training of CPSD sheriff deputies. <u>See</u> <u>Perniciaro</u>, 901 F.3d at 260 (citing <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 293 (5th Cir. 2003) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.")).  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  <u>Iqbal</u>, 556 U.S. at 678. Thompson's § 1983 claims against Sheriff Hedrick for failure to train should be dismissed for failure to state a claim.

### F.    Thompson's § 1983 claims against Brown and Brock, in their individual capacities, should be dismissed.

Defendants invoke qualified immunity as to Thompson's individual capacity claims against Brown and Brock. (Doc. 36-1).  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court conducts the two-part analysis set forth in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). The court decides "(1) whether facts alleged or

shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." Pasco v. Knoblauch, 566 F.3d 572, 579 (5th Cir. 2009) (citing Saucier, 533 U.S. at 201).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009) (quoting Saucier, 533 U.S. at 202). "If the answer to either of the two above questions is 'no,' qualified immunity applies and the government official is immune from suit. The plaintiff bears the burden of overcoming the qualified immunity defense." Deshotels v. Marshall, 454 Fed.Appx. 262, 266 (5th Cir. 2001) (citing Bennett v. City of Grand Prairie, Tex., 883 F.2d 400, 408 (5th Cir. 1989)). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier, 533 U.S. at 206).

Defendants argue Thompson fails to sufficiently allege a violation of his Eighth Amendment constitutional rights. (Doc. 36-1). Defendants assert Thompson fails to assert a claim of deliberate indifference. (Doc. 36-1). Defendants contend the allegations support that prison officials, including Brown and Brock, were attentive to Thompson's needs. (Doc. 36-1).

Defendants argue that, accepting Thompson's allegation as true, he had a history of high blood pressure, acid reflux, and asthma that required daily

medication. (Docs. 35, 36-1). Thompson was prescribed ibuprofen, blood pressure medication, and acid reflux medication during his confinement, and underwent daily asthma treatments and blood pressure checks. (Docs. 35, 36-1). Thompson began having chest pains on August 14, 2016 and advised Brown he was having a heart attack. (Docs. 35, 36-1). Brown recommended a nebulizer treatment but declined Thompson's request to escort him to the bathroom when he "lost his bowels." (Docs. 35, 36-1). Brock observed the incident and transported Thompson to the Riverland Medical Center. (Docs. 35, 36-1). Thompson feels Brock should have called 911 instead. (Docs. 35, 36-1). Riverland Medical Center then transported Thompson to Rapides Regional Medical Center. (Docs. 35, 36-1).

Prior to his early release, Thompson admits he received asthma treatment two times a day and had his blood pressure checked three times a day. (Docs. 1, 35). The asthma treatment was effective, but Thompson claims his blood pressure remained elevated at every check. (Docs. 1, 35). However, "high blood pressure readings alone do not indicate a serious medical need." Pea v. Edwards, 2015 WL 4661646, at *14 (E.D. La. Aug. 5, 2015) (citing Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014)). Thompson admits he was given blood pressure medication, albeit delayed, and that the medication was ineffective at treating his condition. (Doc. 35).

The Fifth Circuit has found no deliberate indifference to an inmate's serous medical needs when an inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment. Id. at *15 (citing LaBorde v. Lowe, 471 F.App'x. 390,

391 (5th Cir. 2012)).  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered).

Here, Thompson's allegations, construed in his favor, do not amount to deliberate indifference.  "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not[,] is insufficient to show deliberate indifference." Domino, 239 F.3d at 756.  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459.  Accordingly, Brown and Brock are entitled to qualified immunity and Thompson's § 1983 individual capacity claims against Brown and Brock should be dismissed.

G.    **Defendants' motion to dismiss Thompson's state law claims of vicarious liability against Sheriff Hedrick should be denied.**

Defendants seek dismissal of Thompson's state law claim against Sheriff Hedrick. (Doc. 36-1).  Defendants correctly assert that La. R.S. 9:2798.1 does not provide a cause of action but is a "discretionary immunity statute." (Doc. 36-1); see Montgomery-Smith v. La. Dept. of Health and Hosp., 299 F.Supp.3d 790, 807 (E.D. La. Mar. 2, 2018) (citing Anderson v. Bossier Par. Police Jury, 153 So.3d 550, 555 (La. App. 2 Cir. 11/19/14), writ denied, 161 So.3d 640 (La. 2015)).

"Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'" <u>Mallery v. Theriot</u>, 2013 WL 2286667, at *2 (W.D. La. May 23, 2013) (citing <u>Roberts v. City of Shreveport</u>, 397 F.3d 287, 296 (5th Cir. 2005)). Subsection B of La. R.S. 9:2798.1 provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or their failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B). In other words, La. R.S. 9:2798.1 provides immunity to state officials for discretionary acts. However, "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" are not subject to this provision. La. R.S. 9:2798.1(C)(2).

In <u>Gregor v. Argenot Great Cent. Ins. Co.</u>, 851 So.2d 959, 966 (La. 2003), the Louisiana Supreme Court held that the object of La. R.S. 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions." Thus, "Section 9:2798.1's text is clear, and the Louisiana Supreme Court has emphasized, that discretionary function immunity only 'applies to policymaking or discretionary acts.'" <u>Cloud v. Stone</u>, CV 18-1070, 2019 WL 238066, at *2 (W.D. La. Jan. 16, 2019) (citing <u>Poche v. Gautreaux</u>, 973 F. Supp. 2d 658, 674 (M.D. La. 2013) (quoting <u>Gregor</u>, 851 So.2d 959 at 967)). Section 9:2798.1

19

"does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns." Lockett v. New Orleans City, 639 F.Supp.2d 710, 745 (E.D. La. 2009), aff'd, 607 F.3d 992, (5th Cir. 2010), cert. den., 562 U.S. 1003 (2010) (quoting Saine v. City of Scott, 819 So.2d 496 (La.App. 3 Cir. 2002)).  Discretionary immunity "protects the government from liability only at the policy-making or ministerial level, not at the operational level." Lockett, 639 F. Supp. 2d at 745 (quoting Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989)). The Court agrees that dismissal would be appropriate, if Thompson asserts claims against Sheriff Hedrick related to policymaking or discretionary acts under state law.

However, Louisiana law provides for vicarious liability, or *respondeat superior*, of employers for the actions of their employees.  La. Civ. Code art. 2320.  Louisiana tort law does not recognize the same limitations on vicarious liability found in § 1983 jurisprudence.  Deville v. Marcantel, 567 F.3d 156, 173 (5th Cir. 2009) ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."). Negligence at the operational level unrelated to public policy consideration is not protected from discretionary immunity.  Gregor, 851 So.2d at 968.

Here, Thompson asserts, albeit inartfully, that Sheriff Hedrick is "liable under La. R.S. 9:2798.1" for the Defendants' "tortuous, criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, and flagrant acts," while in the course and scope of their employment for Sheriff Hedrick.  (Docs. 1, 35).  However, construing

20

the Complaint in a light favorable to Thompson, it appears he is alleging vicarious liability of Sheriff Hedrick for the negligence of Brown and Brock at the "operational level." Accordingly, Defendants' motion to dismiss Thompson's state law tort claim against Sheriff Hedrick should be denied.

### H.    The Court should decline to exercise supplemental jurisdiction over Thompson's state law claims.

A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3); Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993). Among the factors to be considered in exercising this discretion are judicial economy, convenience, fairness, federalism, and comity. See Rosado v. Wyman, 397 U.S. 397, 403-04 (1970). When, as recommended here, all federal claims are dismissed prior to trial, these factors weigh heavily in favor of declining to exercise jurisdiction. See Bunch v. Duncan, 2002 WL 324287 at *4 (N.D. Tex. Feb. 27, 2002) (citing Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). Accordingly, should the Court adopt this recommendation to dismiss Thompson's § 1983 claims, it is also recommended that Thompson's tort claims under Louisiana law be dismissed without prejudice to his right to file suit in the appropriate state court.

### III.    Conclusion

Because Thompson fails to state a plausible claim for relief against Defendants in both their individual and official capacities under § 1983; because Brown and Brock

are entitled to qualified immunity; because Sheriff Hedrick is subject to vicarious liability under state law; and because upon dismissal of all federal claims, the Court should decline to exercise its supplemental jurisdiction;

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) motions (Docs. 22, 36) be GRANTED IN PART and DENIED IN PART. To the extent Thompson fails to assert a plausible claim for relief under § 1983 against Defendants in their individual and official capacities, and to the extent Brown and Brock are entitled to qualified immunity, Defendants' motion should be GRANTED IN PART. To the extent Defendants seek dismissal of Thompson's state law claims against Sheriff Hedrick for vicarious liability, Defendants' motion should be DENIED IN PART.

IT IS FURTHER RECOMMENDED that Thompson's § 1983 claims be DISMISSED WITH PREJUDICE, with Thompson's remaining state law tort claim against Sheriff Hedrick be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___24th___ day of May, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge